## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **EYEVAC, LLC,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:22-CV-00902-DII** |
| | § | |
| **VIP BARBER SUPPLY, INC.,** | § | |
| *Defendant* | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE DISTRICT COURT**

Before the Court is Plaintiff EyeVac, LLC's Motion for Default Judgment, filed November 16, 2023 (Dkt. 18). By Text Order entered December 15, 2023, the District Court referred the motion to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I.    Background

Plaintiff EyeVac, LLC sued Defendants Stylance Inc. and VIP Barber Supply, Inc. for patent infringement under 35 U.S.C. § 271. Complaint, Dkt. 1. Stylance was voluntarily dismissed without prejudice. Dkt. 12. EyeVac now asks the Court to enter a default judgment against VIP Barber Supply. Dkt. 18.

EyeVac, a Texas limited liability company, alleges that it owns U.S. Patent 7,356,872 ("'872 Patent"), "Automated Electronic Vacuum System and Method," for an automatic stationary vacuum that uses a light sensor to detect debris that is swept near it to activate the vacuum. Dkt. 1 ¶¶ 10, 18, 20; Dkt. 1-1 at 9. The primary figure is reproduced below:



Dkt. 1-1 at 2. EyeVac alleges that VIP Barber Supply offers a stationary vacuum, the "Clean All Professional Hair Vacuum SKU FSC-723," that infringes multiple claims of the '872 Patent by using systems and methods under inventions claimed in the '872 Patent without authorization. Dkt. 1 ¶¶ 19, 21-22.

EyeVac served its Complaint on October 11, 2022. Dkt. 9. VIP Barber Supply made no appearance and has failed to plead, respond, or otherwise defend this case. On September 1, 2023, the Clerk entered default against VIP Barber Supply. Dkt. 16. EyeVac now asks the Court to render a default judgment for $8,444 plus costs and interest under 35 U.S.C § 284. Dkt. 18 ¶ 12.

## II.    Legal Standard

Under Rule 55, a default occurs when a defendant fails to plead or otherwise respond to a complaint within the time required. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). After the defendant's default has been entered by the clerk of court, the plaintiff may apply for a judgment based on the default. *Id*. Even when the defendant technically is in default, however, a party is not entitled to a default judgment as a matter of right. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). There must be a sufficient basis in the pleadings for the judgment entered. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).

After a defendant has defaulted, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages. *United States v. Shipco Gen., Inc.,* 814 F.2d 1011, 1014 (5th Cir. 1987); *see also Nishimatsu,* 515 F.2d at 1206 (stating that the defendant, by default, "admits the plaintiff's well-pleaded allegations of fact"). But a default "is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover," and the defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu,* 515 F.2d at 1206.

Entry of a default judgment is within the court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Under Rule 55(b)(2), a court may hold a hearing to conduct an accounting, determine the amount of damages, or establish the truth of any allegation, but a hearing is unnecessary if the court finds it can rely on detailed affidavits and other documentary evidence to determine whether to grant a default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). The Court finds that a hearing is not necessary.

### III.    Analysis

In considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012).

### A.  Jurisdiction

When a party seeks entry of a default judgment under Rule 55, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001) (citation omitted). Because EyeVac asserts claims under 35 U.S.C. § 271, it invokes the Court's original federal question jurisdiction under 28 U.S.C. § 1331.

A federal court may assert personal jurisdiction if (1) the state's long-arm statute applies, and (2) due process is satisfied under the Fourteenth Amendment to the United States Constitution. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). In Texas, the long-arm statute authorizes exercise of jurisdiction over a nonresident to the full extent compatible with federal due process. *Id.* Personal jurisdiction is proper if two requirements are met:

> First, the nonresident defendant must have purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that forum state. Second, the exercise of jurisdiction over the nonresident defendant must not offend traditional notions of fair play and substantial justice.

*Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 323 (5th Cir. 1996) (cleaned up).

To establish minimum contacts, the defendant must have contacts giving rise to either specific or general jurisdiction. *Id.* at 324. In making a determination of fairness, courts consider:

> (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies."

*Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990) (quoting *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113 (1987)). Specific jurisdiction exists when (1) a nonresident defendant has purposefully directed its activities at the forum state, and (2) the litigation results from alleged injuries that arise out of or relate to those activities. *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 250 (5th Cir. 2019).

The Court finds that EyeVac has alleged facts sufficient to establish specific personal jurisdiction over VIP Barber Supply. EyeVac alleges that its injuries arose because VIP Barber Supply "made, used and/or sold EyeVac's patented inventions" in Texas and derived "substantial revenue from goods and services provided to persons or entities in Texas." Dkt. 1 ¶ 7. Accepting these well-pleaded facts as true, the Court finds that this case arises out of VIP Barber Supply's

contact with Texas and that it purposefully directed its activities to and availed itself of this forum. The Court also finds that exercise of jurisdiction over VIP Barber Supply would not be inconsistent with the United States Constitution and laws or "offend traditional notions of fair play and substantial justice." *Felch*, 92 F.3d at 323. The Court has specific personal jurisdiction over VIP Barber Supply.

## B. Liability

The Court next considers whether a default judgment is procedurally warranted and the Complaint sufficiently sets forth facts showing that EyeVac is entitled to relief. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

### 1. Default Judgment is Procedurally Warranted

In determining whether a default judgment is procedurally warranted, district courts consider six factors:

(1) whether material issues of fact are at issue;

(2) whether there has been substantial prejudice;

(3) whether the grounds for default are clearly established;

(4) whether the default was caused by a good faith mistake or excusable neglect;

(5) the harshness of a default judgment; and

(6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.

The Court finds that default judgment is procedurally warranted. First, there are no material facts in dispute because VIP Barber Supply has not filed an answer or any responsive pleadings. *Nishimatsu*, 515 F.2d at 1206. Second, VIP Barber Supply's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [EyeVac's] interests." *J&J Sports Prods.,*

5

*Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015) (citation omitted). Third, the grounds for default are clearly established: VIP Barber Supply was "properly served and has failed to appear and participate at all, much less timely file a responsive pleading," and the Clerk has entered default against it. *Can Cap. Asset Servicing, Inc. v. Walker*, No. 1:17-CV-1147-RP, 2019 WL 2298703, at *2 (W.D. Tex. May 30, 2019). Fourth, the Court cannot find a good-faith mistake or excusable neglect because VIP Barber Supply has failed to appear. Fifth, though EyeVac seeks both monetary damages and injunctive relief, it seeks only that relief to which it is entitled under federal patent law, limiting the harshness of a default judgment. Sixth, "the Court is not aware of any facts that would obligate it to set aside the default if challenged" by VIP Barber Supply. *Id.* For these reasons, the Court finds that default judgment is procedurally warranted.

**2.   There is a Sufficient Basis for Judgment in the Pleadings as to Direct Infringement**

The Court next determines whether there is a sufficient basis in the pleadings for the judgment requested. EyeVac asserts claims for direct and indirect infringement, alleging that VIP Barber Supply has "directly or indirectly infringed (by contributory infringement and/or inducement of infringement)." Dkt. 1 ¶ 22.

**a.   Direct Infringement**

The Patent Act imposes liability on anyone who, without authorization, "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). To state a claim of direct infringement, "a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim(s)." *Avus Holdings, LLC v. Iron Lab*, No. 6:22-CV-00134-ADA, 2022 WL 4099748, at *3 (W.D. Tex. Sept. 7, 2022); *see also Bot M8 LLC v. Sony Corp. of*

*Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) ("There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.").

EyeVac alleges that:

(1) It owns all right, title, and interest in the '872 Patent, Dkt. 1 ¶ 10;

(2) Claims 1, 2, 3, and 4 of the '872 Patent include "systems for vacuuming a refuse on a surface [and] the systems contact and fit on the surface when in use for vacuuming,"[1] *id.* ¶ 18;

(3) Claims 8, 9, and 10 of the '872 Patent include "methods of automated operation of a vacuum device,"[2] *id.* ¶ 20;

(4) VIP Barber Supply makes, uses, sells, offers to sell, and/or imports in or into the United States "systems and methods under inventions claimed in the '872 Patent," *id*. ¶¶ 19-23; and

(5) VIP Barber Supply's product uses each of the systems and methods in Claims 1, 2, 3, 4, 8, 9, and 10. *Id.* ¶¶ 19, 21.

By failing to answer, VIP Barber Supply has admitted these facts. *Nishimatsu*, 515 F.2d at 1206.

The Court finds that these well-pleaded facts establish that VIP Barber Supply has directly infringed the '872 Patent. EyeVac alleges that every element of the above claims of the '872 Patent is met by VIP Barber Supply's "Clean All Professional Hair Vacuum SKU FSC-723." Dkt. 1 ¶¶ 19, 21. Taking the alleged facts as true, EyeVac has sufficiently established that VIP Barber Supply directly infringes the '872 Patent.

---

[1] EyeVac fully describes Claims 1, 2, 3, and 4 as follows:

The systems include a housing with an inlet and an outlet, the inlet contacts the surface, a vacuum motor connected to the inlet and outlet, a light source connected to the housing, a light sensor connected to the housing to sense the light source, and a controller that controls the vacuum motor in response to the light source interrupted to the light sensor.

Dkt. 1 ¶ 18.

[2] EyeVac fully describes Claims 8, 9, and 10 as follows:

The methods include providing a light sensor to a vacuum device, providing a light source to the vacuum device, the light source visible to the light sensor if not interrupted, positioning the vacuum device on a surface to be vacuumed, sensing an external event to the vacuum device adjacent the surface, and controlling power to the vacuum device for operating the vacuum device based on sensing.

Dkt. 1 ¶ 20.

### b.  Indirect Infringement

EyeVac alleges that VIP Barber Supply indirectly infringed "by contributory infringement and/or inducement of infringement." *Id.* ¶ 22. Both contributory and induced infringement require patent infringement by another. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379-81 (Fed. Cir. 2017). EyeVac does not allege facts sufficient to allow an inference that another party directly infringed, which is necessary for a claim of indirect infringement. The Court finds that there is no basis in the pleadings for default judgment on EyeVac's indirect infringement claims.

### c.  Willful Infringement

EyeVac also alleges that VIP Barber Supply's actions were willful. Dkt. 1 ¶ 24. To establish willful patent infringement, a plaintiff must show that the defendant "(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Parity Networks, LLC v. Cisco Sys.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019) (citation omitted). While EyeVac alleges that "Defendants have had knowledge of the '872 Patent," it claims to have notified only Stylance of its alleged infringement, and Stylance is no longer a defendant in this case. Dkt. 1 ¶¶ 13, 23. Because EyeVac does not allege that VIP Barber Supply had actual knowledge of the '872 Patent, it does not state a claim for willful infringement. *Avus Holdings*, 2022 WL 4099748, at *4.

## C.  Relief

Having found that the motion for default judgment should be granted and judgment entered in favor of EyeVac on its claim for direct patent infringement, the Court must determine the appropriate relief. EyeVac seeks "liquidated damages in the amount of $8,444," which appears to be a request for attorneys' fees, plus costs and interest. Dkt. 18 at 2; Dkt. 18-1 at 6. EyeVac also

requests a permanent injunction and treble damages for willful infringement. Dkt. 18-2 at 2. Because EyeVac has not stated a claim for willful infringement, the Court considers only its requests for injunctive relief and attorneys' fees and costs.

### 1. Injunctive Relief

EyeVac asks the Court to permanently enjoin VIP Barber Supply from "infringing, directly or indirectly," the '872 Patent. Dkt. 18-2 at 2. Courts apply a four-factor test to determine whether to issue a permanent injunction:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

To satisfy the first factor, EyeVac must show both "(1) that absent an injunction, it will suffer irreparable harm, and (2) that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1359-60 (Fed. Cir. 2013) ("*Apple III*") (citation omitted). EyeVac alleges that, as "a direct and proximate consequence of the acts and practices of" VIP Barber Supply, it has suffered and will continue to suffer injury in its "business and property rights." Dkt. 1 ¶ 25. This conclusory statement does not show that EyeVac will suffer irreparable harm absent an injunction. EyeVac identifies no economic or other intangible harms from VIP Barber Supply's infringement. Nor has EyeVac shown a causal nexus. "The purpose of the causal nexus requirement is to establish the link between the infringement and the harm, to ensure that there is 'some connection' between the harm alleged and the infringing acts." *Apple Inc. v. Samsung Elecs. Co.,* 809 F.3d 633, 640 (Fed. Cir. 2015) (quoting *Apple III*, 735 F.3d at 1364). To show a causal nexus between the harm it has suffered and VIP Barber

Supply's infringement, EyeVac must show "some connection between the patented feature and demand for [VIP Barber Supply's] products." *Apple III*, 735 F.3d at 1364.

EyeVac alleges no connection between the patented features and consumer demand for VIP Barber Supply's products. It has not satisfied the first requirement for a preliminary injunction.

## 2. Attorneys' Fees and Costs

In patent infringement actions, courts "in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545, 554 (2014). Courts have discretion to determine whether a case is exceptional and may consider nonexclusive factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 & n.6 (citation omitted). The purpose of fees is to prevent a prevailing party from suffering a "gross injustice." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F .3d 1371, 1376 (Fed. Cir. 2017). EyeVac does not cite Section 285 or describe how this case is exceptional. The Court finds that this case does not stand out from others and so is not exceptional. *See DynaEnergetics Eur. GmbH v. Rock Completion Tools, LLC*, No. 6:21-cv-00084, 2022 WL 358163, at *3 (W.D. Tex. Feb. 4, 2022) (denying fees on default judgment).

EyeVac is entitled to costs under 35 U.S.C. § 284. It requests $402 fee for filing this action and two expenses of $109 and $59.50, each identified only as a "Third Party" expense. Dkt. 18-1 at 8. The filing fee of $402 is recoverable under 28 U.S.C. § 1920(1), but EyeVac provides insufficient information to determine whether the other two expenses are recoverable.

### IV.   Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Plaintiff EyeVac, LLC's Motion for Default Judgment against Defendant VIP Barber Supply, Inc., enter **DEFAULT JUDGMENT** against VIP Barber Supply under Rule 55(b) on its claim for direct patent infringement, and **DISMISS** its remaining claims.

The Court further **RECOMMENDS** that the District Court award EyeVac $402 in costs from VIP Barber Supply under 35 U.S.C. § 284.

It is **ORDERED** that the Clerk **REMOVE** this case from this Magistrate Judge's docket and **RETURN** it to the docket of the Honorable District Court.

### V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. See *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on April 10, 2024.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE